CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
DEC 0 6 2018
JULIA C. DUDLEY, CLERK
BY: H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL BRADY LESTER, | ) | Civil Action No. 7:16-cv-00312 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, et al., | ) | By: Hon. Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |

Michael Brady Lester, a Virginia inmate proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983 against defendants associated with the Virginia Department of Corrections ("VDOC"). Currently pending are defendants Harold Clarke and Mark Amonette's motion to dismiss [ECF No. 203] and defendant Dr. Matthew McCarthy's motion to dismiss and in the alternative for summary judgment [ECF No. 199]. I referred the motions to a United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge filed a report and recommendation on July 5, 2018 (ECF No. 303), recommending that defendants' motions be denied. Only defendant Dr. McCarthy responded, objecting to the recommended denial of his motion [ECF No. 304]. After reviewing the record, I sustain the objection, reject in part and adopt in part the report and recommendation, grant Dr. McCarthy's motion for summary judgment, and deny Clarke and Amonette's motion to dismiss.

I.

A district court must review de novo any part of a report and recommendation to which a party objects properly. 28 U.S.C. § 636(b)(1)(C); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The district court's reasoning need not be elaborate or lengthy, but it must provide a specific rationale that permits meaningful appellate review. See, e.g., United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009). A party must object "with sufficient specificity so as

reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Fourth Circuit explained that:

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

De novo review is not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Orpiano, 687 F.2d at 47. An objection that repeats arguments raised before a magistrate judge is deemed a general objection to the entire the report and recommendation, which is the same as a failure to object. Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008). A district court is also not required to review any issue de novo when no party objects. See, e.g., Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

A district court reviews for clear error any part of a report and recommendation not properly objected to. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). Clear error means that a court, after "reviewing . . . the entire evidence[,] is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); see FTC v. Ross, 743 F.3d 886, 894 (4th Cir. 2014) (noting a factual finding based on the resolution of conflicting evidence is entitled to deference under the clear error standard).

# II.
## A.

Plaintiff is infected with Hepatitis-C ("HCV") and incarcerated in the VDOC. Plaintiff has one kidney, suffers from hyperthyroidism, and has experienced chronic fatigue and sharp, stabbing pain under his right rib cage.

Dr. Amonette is the VDOC's Chief Physician and makes the decision whether an inmate with HCV may consult with a specialist physician at Virginia Commonwealth University's ("VCU") HCV Telemedicine Clinic. Dr. Amonette is supposed to make this decision based on the VDOC's Interim Guideline for Chronic Hepatitis C Infection Management ("Guideline") that he developed.

The Guideline is the VDOC's protocol to triage HCV in the VDOC inmate population. It prioritizes those inmates with more advanced liver disease by relying on, inter alia, blood test results known as APRI that calculate a level of liver impairment. If an inmate qualifies under the Guideline, he is allowed to consult with the specialist at VCU.

Direct-acting antiviral drugs ("DAAs") have been the current standard of medical care for treating HCV since 2013. DAA treatment lasts about 12 weeks, has a high rate of effectiveness, and is effective at any stage of the disease. However, DAA treatment can cost approximately $80,000 per inmate.

Dr. McCarthy was Plaintiff's primary physician at the prison and was responsible for day-to-day physical evaluations. Per the Guideline, Dr. McCarthy is also responsible for sending to Dr. Amonette Plaintiff's requests to consult with the specialist at VCU.

On November 3, 2015, Plaintiff asked for an evaluation of his HCV. Dr. McCarthy examined Plaintiff on November 11, noting Plaintiff was alert and oriented, had no jaundice or

3

distended abdomen, and had warm and dry skin. Dr. McCarthy did not see any "red flags," meaning that nothing from the exam indicated liver disease. Dr. McCarthy ordered blood work and educated Plaintiff about the Guideline. Dr. McCarthy told Plaintiff that, in the absence of liver disease, there is no harm in waiting for DAAs. The blood work later confirmed that Plaintiff had the most common genotype of HCV.

Plaintiff filed his HCV Treatment Request forms ("Treatment Request") on November 18, 2015, noting that he also suffered from GERD, glaucoma, and a hyperthyroidism. On February 8, 2016, Dr. McCarthy calculated Plaintiff's APRI score as 0.243 and noted that score on the Treatment Request. Dr. McCarthy deemed the score as "very low" and that, in his experience, inmates who were approved for further evaluation under the Guideline had higher APRI scores. On February 9, 2016, Dr. McCarthy sent the APRI score and Treatment Request to Dr. Amonette's office for approval. Dr. McCarthy has no authority to provide DAAs without Dr. Amonette's approval.

On February 26, 2015, Dr. McCarthy received Dr. Amonette's decision to decline a referral for Plaintiff to consult with the VCU HCV Telemedicine Clinic. Dr. McCarthy was advised to monitor Plaintiff with at least an annual HCV checkup and to resubmit the Treatment Request if blood work suggests "disease progression."

Dr. McCarthy examined Plaintiff on March 23, 2016, for HCV and for abdominal pain in the right upper quadrant. Dr. McCarthy noted Plaintiff's abdominal pain was vague and told Plaintiff of Dr. Amonette's decision.

After more blood was tested, Dr. McCarthy examined Plaintiff again on May 30, 2016, about the abdomen pain. Plaintiff tested negative for gallbladder disease. Dr. McCarthy

prescribed Prilosec for GERD, increased the dosage of Levothyroxine to treat Plaintiff's thyroid, and ordered a blood test for the thyroid.

Dr. McCarthy saw Plaintiff on September 14, 2016, for abdominal pain, depression, fatigue, and sleepiness. Dr. McCarthy's exam showed that Plaintiff's abdomen was not distended and had no guarding in the right upper quadrant. Plaintiff also tested negative for gallbladder disease. Dr. McCarthy believed Plaintiff's symptoms were related to his hypothyroidism and encouraged Plaintiff to have blood drawn to test his thyroid. Nonetheless, Dr. McCarthy also ordered liver function tests and a test for infection and noted he would discuss ultrasound options with Dr. Amonette.

More blood was tested, and the lab report showed on January 4, 2017, that Plaintiff's liver enzymes were within normal range. Dr. McCarthy calculated the APRI at 0.221, which was less than the prior score of 0.243.

Dr. McCarthy examined Plaintiff again on June 5, 2017, to monitor the HCV. More blood was tested again, and Dr. McCarthy calculated the APRI at 0.363, which still did not indicate to Dr. McCarthy any sign of liver disease.

Dr. McCarthy examined Plaintiff on August 14, 2017, for complaints of tiredness and depression. Dr. McCarthy believed these symptoms could be a result of the hyperthyroidism, depression, or HCV. Dr. McCarthy recommended Plaintiff speak with mental health staff. Nonetheless, he also ordered additional blood work, including another HCV test. More blood was tested, and Dr. McCarthy calculated the APRI at 0.283.

Plaintiff alleges that Dr. McCarthy should have referred him to Dr. Amonette for DAAs due to his "extra-hepatic condition" of debilitating fatigue. Plaintiff argues that he is improperly being denied DAAs due to cost and the practices and protocols of the VDOC. Plaintiff

concludes that this failure amounts to deliberate indifference to a serious medical need in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

B.

It is recommended that I deny McCarthy's motion to dismiss. The report and recommendation noted that Plaintiff's allegations in the second amended complaint, when assumed as true, state a claim:

> Even assuming that Dr. McCarthy cannot render treatment for Lester's HCV without the approval of [Dr. Amonette], [Dr. McCarthy] ... acted in a "gatekeeping" role. Lester alleges that, in certain circumstances, extra-hepatic conditions necessitate an HCV treatment request be made to Dr. Amonette under the VDOC Guideline. One such extra-hepatic condition is debilitating fatigue, a condition that Lester claims he advised Dr. McCarthy he suffered from on several occasions. Nonetheless, Dr. McCarthy did not request treatment for Lester from Dr. Amonette, in essence, assuring that Lester would not receive HCV treatment. In addition to his claims of chronic or debilitating fatigue, Lester also claims that he expressed his concerns to Dr. McCarthy about experiencing right side abdominal pain and having only one kidney, which he feared would be irreversibly damaged by his HCV if left untreated. Despite all of these extra-hepatic complaints by Lester, Lester alleges that Dr. McCarthy never sent a request for treatment to Dr. Amonette. I find that such allegations state a plausible claim for deliberate indifference to Lester's serious medical needs by Dr. McCarthy.

(Report and Recommendation at 21.)

As for denying Dr. McCarthy's motion for summary judgment, the report and recommendation reads:

> The essence of Lester's lawsuit is that the defendants, including Dr. McCarthy, knew of the serious danger posed to Lester's health by his HCV, but, nonetheless, did not treat his HCV at all. ... In sum, I find ... that Lester has produced evidence from which a jury could find that the defendants, including Dr. McCarthy, engaged in an "abject failure to treat a serious disease and its symptoms ... that [they] knew about." I further find that no reasonable official could think such a willful refusal to treat a known, serious condition did not violate the Eighth Amendment. ... [T]he Fourth Circuit has repeatedly held that "a prison official's total failure to treat a serious, known affliction is unconstitutional, and it has more than

6

once reversed district courts for dismissing such claims at the pleading stage."

(Id. at 24-25 (internal citations omitted).)

### C.

Dr. McCarthy objects to the report and recommendation, principally arguing he is entitled to summary judgment because he cannot provide relief in an official capacity and is entitled to qualified immunity in a personal capacity. I agree and sustain the objection.

The equitable relief Plaintiff seeks – to be referred to the VCU HCV Telemedicine Clinic and be prescribed DAAs – cannot be granted against Dr. McCarthy in an official capacity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (discussing the nuances between official and individual capacities under § 1983). Dr. Amonette is the official who can approve Plaintiff for that consultation. Accordingly, Dr. McCarthy is entitled to summary judgment in an official capacity because the demanded equitable relief cannot be redressed from him. See Okpalobi v. Foster, 244 F.3d 405, 426 (5th Cir. 2001) (discussing redressability for equitable relief).

Qualified immunity is immunity from suit and not just a defense to liability. Pearson v. Callahan, 555 U.S. 223, 231 (2009); see South Carolina State Bd. of Dentistry v. F.T.C., 455 F.3d 436, 446-47 (4th Cir. 2002) (noting qualified immunity does not apply to declaratory or injunctive relief). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. A grant of qualified immunity depends on (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the

alleged violation. Id. at 232, 236; see In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) ("[A]n official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority.").

To state a claim under the Eighth Amendment for the unconstitutional denial of medical assistance, a plaintiff must show that a defendant acted with deliberate indifference to a serious medical need.[1] West v. Atkins, 487 U.S. 42, 48 (1988); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Conner v. Donnelly, 42 F.3d 220, 222 (4th Cir. 1994). Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52. The inmate must show a "significant injury" resulting from the deliberate indifference. Danser v. Stansberry, 772 F.3d 340, 346 n.8 (4th Cir. 2014); see Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001) ("[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.").

---

[1] A serious medical need is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Even after viewing the record and all inferences therefrom in Plaintiff's favor, no reasonable trier of fact could conclude that Dr. McCarthy appreciated that his monitoring of Plaintiff's HCV created an excessive risk to Plaintiff's safety. See Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (recognizing qualified immunity should apply when no reasonable trier of fact could rule in the plaintiff's favor). Dr. McCarthy repeatedly examined Plaintiff, repeatedly evaluated Plaintiff's viral load, abdominal pain, and hyperthyroidism, and repeatedly scored him with "very low" APRI scores. No objective criteria revealed any substantial risk of serious harm from his HCV viral load or to his liver function. Dr. McCarthy repeatedly evaluated Plaintiff's abdomen pain or fatigue and diagnosed three possible causes for the fatigue. One of the possible causes – depression – would require treatment from a mental health professional, not Dr. McCarthy. Dr. McCarthy continued to investigate the two other possible causes – hyperthyroidism or HCV. Even if one could, arguendo, say that there was a delay to process the Treatment Request between November 2015 and February 2016 and that delay was solely attributable to Dr. McCarthy, Plaintiff fails to establish any significant injury from that three-month delay. See, e.g., Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008) ("An Eighth Amendment violation only occurs, however, if the delay [in treatment] results in some substantial harm to the patient."). In sum, the record does not support an inference that Dr. McCarthy recklessly disregarded, or actually intended, an exposure to a substantial risk of serious harm. See Farmer, 511 U.S. at 837 (holding a "sufficiently culpable state of mind" means that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); see also Danser, 772 F.3d at 348-49 (applying Farmer to hold no triable issue of deliberate

indifference when the record does not show that the state official knew of an obvious risk of substantial harm).

Furthermore, no "clearly established law" during Plaintiff's evaluations alerted Dr. McCarthy that his continued evaluation of Plaintiff's HCV was so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness. See, e.g., Miltier, 896 F.2d at 851. The law had informed Dr. McCarthy that he had to exercise reasonable care to prevent an unreasonable risk of harm. Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973); see Whitley v. Albers, 475 U.S. 312, 319 (1986) ("[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). No pertinent legal opinion has circumscribed medical professionals' discretion at issue here, requiring them to provide DAAs to inmates with "very low" APRI scores. See, e.g., Lefemine v. Wideman, 672 F.3d 292, 298 (4th Cir. 2012) (discussing which courts' decisions apply to the clearly-established prong). Nor has such a holding come up in analogous situations. See United States v. Lanier, 520 U.S. 259, 271 (1997) (noting that rights may be "clearly established" sufficient to overcome a defendant's claim of qualified immunity if a "general constitutional rule already identified in the decisional law . . . appl[ies] with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."). For example, no pertinent authority has held that cruel and unusual punishment results when a prison doctor does not authorize an inmate with very low cholesterol to consult with a heart specialist about receiving a stent to mitigate the ever-present risk of a heart attack or stroke.

The Eighth Amendment does not require prison officials to eliminate all risks or preclude all punishments. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981) ("[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). Viral infections, whether HCV, HIV, HPV, EBV, influenza, herpes, or others, are common, and may constitute a greater quantifiable risk of harm to some more than others. Here, Dr. McCarthy exercised his professional discretion and managed Plaintiff's risk with repeated blood tests and examinations. The fact Plaintiff did not receive his preferred treatment – Dr. Amonette's approval for consultation with a specialist at VCU – does not mean there was a lack of medical treatment by Dr. McCarthy. Ultimately, Plaintiff cannot proceed under 42 U.S.C. § 1983 to challenge Dr. McCarthy's professional diagnoses of how benign or severe his symptoms or illnesses were. See, e.g., Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Also, Plaintiff cannot rely solely on the costs of DAAs to create a triable issue of fact with Dr. McCarthy. The Supreme Court recognizes that "society does not expect that prisoners will have unqualified access to health care...." Hudson v. McMillian, 503 U.S. 1, 9 (1992). Treatment may be "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Furthermore,

> [w]hile inmates are entitled to adequate medical care under the Eighth Amendment, they are not entitled to the best and most expensive form of treatment. It is an unfortunate fact of modern life that cost considerations must enter into the equation for virtually every person seeking medical treatment, not just inmates. We note that the Eighth Amendment does not forbid prison

officials from considering cost in determining the appropriate course of treatment so long as the treatment does not put the prisoner at risk of serious injury and the decision was not made with deliberate indifference. It only becomes unacceptable if prison officials make health care decisions solely upon cost considerations without any medical rationale.

Taylor v. Barnett, 105 F. Supp. 2d 483, 489 n.2 (E.D. Va. 2000) (internal citation omitted). Accordingly, Dr. McCarthy is entitled to qualified immunity because his conduct satisfies the objective legal reasonableness test when compared to clearly established law from that time. See, e.g., Anderson v. Creighton, 483 U.S. 635, 639 (1987).

### III.

For the foregoing reasons, I sustain Dr. McCarthy's objection, reject in part the report and recommendation as to Dr. McCarthy, and adopt in part as to the remaining portions of the report and recommendation. Therefore, Dr. McCarthy's motion for summary judgment is granted, and Clarke and Amonette's motion to dismiss is denied.

ENTERED this 6th day of December, 2018.

*[signature]*
SENIOR UNITED STATES DISTRICT JUDGE